**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Terry Lynn FRANKLIN, Defendant–Appellant.**

**No. 86CA1260.**

Colorado Court of Appeals, Div. I.

Jan. 26, 1989.

Rehearing Denied March 9, 1989.

Certiorari Denied July 31, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Hope P. McGowan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Dennis W. Hartley, P.C., Dennis W. Hartley, Colorado Springs, for defendant-appellant.

STERNBERG, Judge.

The defendant, Terry Lynn Franklin, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree murder, attempted first degree murder, and two counts of a crime of violence. We reverse as to the first degree murder conviction and remand for further proceedings.

This case arises from a shooting that took place at a party. Considerable drinking was going on and several altercations with racial overtones took place, some of which involved the victim, a black man. The victim and a white woman, both drunk, were involved in one of the arguments. The defendant, a white man, was not involved in that argument, but he had complained about the presence of blacks at the party.

Later, as the victim and a friend were leaving, an argument ensued between the victim and the same woman he had argued with earlier that evening. The woman was screaming racial epithets as her husband restrained her by the arms. The defendant was watching the confrontation while leaning against his truck parked in the driveway. The defendant then said, "I'll take care of this," and shot a pistol three times, fatally wounding the victim.

The victim's friend ran away, but returned when he heard the victim saying he'd been shot. He confronted the defendant saying "you shot Mike." The defendant said "Yeah, and you're next." The victim's friend started to run again as the defendant attempted to shoot him; however, the gun jammed as he tried to fire it. As defendant unloaded the weapon, shell casings dropped to the ground.

A prosecution witness who was also at the party testified that, just before the shooting, he tried to follow the victim out the front door but was prevented from doing so by an "unnamed man" who had been seen talking to defendant on several occasions throughout the evening. The unknown declarant told the witness, "Now is not a good time to go out," then counted off three shots as they were fired saying, "That's three, three more to go." Admission of this testimony raised what we perceive to be the principal contention of error.

## I.

The defendant contends that the above quoted statements of the unknown declarant are hearsay and the trial court erred in admitting them.  We agree.

■ Hearsay is a statement other than one made by a declarant while testifying at the trial, offered in evidence to prove the truth of the matter asserted.  CRE 801(c). The People argue that the testimony was not hearsay because it was not offered to prove the truth of the matter asserted— that it was not a good time for the witness to go outside.  Rather, they contend the statements were offered to show prior knowledge on the declarant's part as evidence of deliberation by the defendant.

However, if we analyze the statement for the content that, in reality, was being communicated, we conclude the declarant was in essence, saying, "Now is not a good time to go out because the defendant is going to shoot someone and I know this because he told me...."  Indeed, just such a characterization of the remarks was argued to the jury by the People.  Therefore, because the matter asserted was evidence of deliberation on the part of the defendant, and because the declarant's statements were offered to prove the truth of the matter asserted, the statements were hearsay.

The trial court conceded its uncertainty as to whether the statements were hearsay but, nevertheless, held the statements admissible as an exception to the hearsay rule under CRE 803(1) as a spontaneous present sense impression.

Fed.R.Evid. 803(1) defines a present sense impression as:

"a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."

The policies underlying the enactment of the Colorado Rules of Evidence were generally those articulated and furthered by Congress in enacting the Federal Rules of Evidence.  *See* preliminary comment to CRE, C.R.S. (1984 Repl.Vol. 7B at 659).

■ However, CRE 803(1) reveals a departure from its federal counterpart in defining a spontaneous present sense impression as:

"a spontaneous statement describing or explaining an event or condition made while the declarant was perceiving the event or condition."

The change was prompted by the fact that neither immediacy nor spontaneity would be guaranteed by the Federal rule, and because Colorado case law required a present sense impression to be instinctive and spontaneous in order to be admissible. *See Denver City Tramway Co. v. Brumley*, 51 Colo. 251, 116 P. 1051 (1911); *see* CRE 803(1) (Official Comment).

Therefore, as distinguished from the Federal rule, for testimony to be admitted under CRE 803(1), it must be a spontaneous statement describing or explaining an event or condition made while the declarant is perceiving the event or condition.

■ Insofar as the statements pertained to deliberation by defendant, they were not a spontaneous impression of acts then taking place.  Rather, they were statements that implied the declarant's knowledge of existing facts not then observable to the witness or the declarant, and were a prediction based thereon of future events to occur, all arguably implying deliberation on the part of the defendant.  As such, they do not fall within the spontaneous present sense impression exception to the hearsay rule.  *See People v. Madson*, 638 P.2d 18 (Colo.1981).

This same reasoning applies in analyzing the excited utterance exception to the hearsay rule, CRE 803(2).  The rationale supporting the excited utterance exception is that statements made under the stress of excitement are generally reliable because of the lack of time to fabricate.  *See W.C.L. v. People*, 685 P.2d 176 (Colo.1984). Here, the unknown declarant's statements were not a product of a startling event; rather, they were statements implying prior knowledge of events about to occur. Therefore, the declarant's hearsay statements cannot be characterized as excited utterances.

The People also argue that the statements are admissible because they were contrary to the declarant's penal interest. CRE 804(b)(3) provides, in pertinent part, that a declarant's statement is not excluded under the hearsay rule if, at the time of its making, it "so far tended to subject him to ... criminal liability .... that a reasonable man in his position would not have made the statement unless he believed it to be true."

■ However, a declarant's statement is admissible under this exception to the hearsay rule, only if the declarant is first determined to be unavailable. CRE 804(a).

■ It is the duty of the People, as the proponents of the declarant's statement, to prove his unavailability. Unavailability is proven by showing that good faith and reasonable efforts have been made to produce the declarant for trial, but without success. *See People v. Arguello*, 737 P.2d 436 (Colo.App.1987). Here, even after defense counsel presented some evidence of the declarant's identity and whereabouts, the People made no effort to produce the declarant. Therefore, because the People failed to prove the declarant's unavailability, the declarant's statements are inadmissible under CRE 804(b)(3).

■ In addition, the trial court found, and the record supports, insufficient evidence to warrant the admission of the declarant's statements under the co-conspiracy exception. CRE 801(d)(2)(E).

■ We also conclude that the statements are not admissible under CRE 803(3), the state of mind exception to the hearsay rule. Under that exception, assertions about the *declarant's* state of mind are admissible to prove the truth of the matter asserted, but such statements are not admissible to show the state of mind of another, here the defendant. *See People v. Madson, supra.*

■ Therefore, we hold that the declarant's statements are inadmissible under any of the applicable exceptions to the hearsay rule. Moreover, even relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury. CRE 403. Here, the declarant's statements have some probative value to evidence deliberation before arriving at an intent to kill the victim, but such inference follows only if a number of speculative assumptions about the statements are made. These include that the declarant was referring to something defendant, rather than someone else, had told him, and that defendant had determined to kill, as opposed to merely firing warning shots. Because of the ambiguous meaning of the statements, they could only have served to prejudice, confuse, or mislead the jury, and therefore, should not have been admitted for this reason as well.

Because of this disposition, we do not address the defendant's contention that admission of this testimony violated his Sixth Amendment right of confrontation.

■ The evidence which we find improperly admitted went to prove deliberation by the defendant, which is the distinction between first and second degree murder. All elements of the latter offense, and the other offenses of which defendant was convicted, were established by the evidence properly before the jury. Thus, it is appropriate to vacate the conviction of first degree murder and conditionally remand the case. At the discretion of the prosecution, defendant may be resentenced for second degree murder, and the other crimes of which he was convicted, or may be retried for first degree murder. *See Crespin v. People*, 721 P.2d 688 (Colo.1986).

## II.

Among the alleged errors which may arise in the event of a retrial is defendant's contention that his due process rights were violated as a result of the state's failure to preserve fingerprint evidence from shell casings ejected from the murder weapon. We perceive no due process defect.

■ The state has a duty to preserve evidence only if it might be expected to play a significant role in the suspect's defense. Thus, we must determine whether

the evidence possessed an exculpatory value that was apparent before it was destroyed, and whether it was of such a nature that defendant would be unable to obtain comparable evidence by other reasonably available means. *People v. Greathouse,* 742 P.2d 334 (Colo.1987).

The significance of any fingerprint evidence on the casings was not so obvious for purposes of defendant's defense as to require them to be retained and examined. The fact that the shell casings were scattered was consistent with eyewitness accounts indicating defendant fired the gun from various locations. Based upon this information, the investigating officers had no reason to suspect that the casings were deliberately moved from the location at which they were originally discarded. We agree with the trial court that, even if fingerprints had been found on the casings, such evidence would not necessarily be favorable or material to defendant.

Furthermore, the latest supreme court announcement on this subject is *Arizona v. Youngblood,* —— U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). In *Youngblood,* the police officers' failure to preserve evidence potentially useful to defendant does not violate due process unless it is shown that officers acted in bad faith. Here, there was no suggestion of bad faith on the part of the police.

Therefore, because defendant failed to demonstrate the exculpatory value of the shell casings, or to show bad faith on the part of the police, we conclude that there was no violation of due process.

### III.

Defendant's contentions concerning admission of photographs and denial of his motion for mistrial are without merit.

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with the views expressed herein.

PIERCE and REED, JJ., concur.