Katherine VOIGHT, Plaintiff–Appellant and Cross–Appellee,

v.

The COLORADO MOUNTAIN CLUB, a Colorado corporation, Defendant–Appellee and Cross–Appellant.

No. 89CA1684.

Colorado Court of Appeals, Div. I.

Aug. 1, 1991.

Rehearing Denied Sept. 5, 1991.

Haddon, Morgan & Foreman, P.C., Norman R. Mueller, Rachel A. Bellis and Leventhal & Bogue, P.C., Jim Leventhal, Denver, for plaintiff-appellant and cross-appellee.

Walberg & Dagner, P.C., Deana Willingham Dagner and Wendelyn K. Walberg, Englewood, for defendant-appellee and cross-appellant.

Opinion by Judge DUBOFSKY.

Plaintiff, Katherine Voight, appeals the judgment notwithstanding the verdict entered by the trial court in favor of defendant, Colorado Mountain Club (CMC). She also appeals the trial court's refusal to admit certain evidence and dismissal of her punitive damages claim. CMC cross-appeals several rulings of the trial court. We affirm the trial court's dismissal of the punitive damages claim. The judgment notwithstanding the verdict is reversed and the trial court is directed to reinstate the jury verdict and enter judgment thereon.

On December 16, 1987, Voight participated in a CMC sponsored hike on Loveland Pass. While on the return part of her hiking trip, she became separated from other members of the group and remained the rest of that day and night on the mountain. The next morning she was located by an alpine rescue squad and flown to a hospital for emergency treatment. She suffered from frostbite and incurred serious physical injuries which resulted in amputation of her toes and other parts of her feet.

Voight alleged negligence against CMC and CMC's designated leader of the hike, Carl Hinrichs. Voight and Hinrichs settled their claims prior to trial.

After a 12-day trial, the jury determined that CMC was 70 percent negligent and Voight was 30 percent negligent and assessed her damages at $600,000. The trial court, however, granted defendant's motion for judgment notwithstanding the verdict and determined that plaintiff was, as a matter of law, as negligent as defendant and that, therefore, she was barred from recovering damages.

I.

Voight argues that the trial court erred in entering judgment notwithstanding the verdict. We agree.

A judgment notwithstanding the verdict is justified only if the evidence, considered in the light most favorable to the verdict, is so overwhelmingly in favor of the movant as to admit to no other reasonable conclusion. *Wesley v. United Services Automobile Ass'n*, 694 P.2d 855 (Colo.App.1984). Only if reasonable persons could not reach the same conclusion as the jury can a motion for judgment notwithstanding the verdict based on insufficiency of the evidence be granted. *Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544 (Colo.1988).

Generally, the jury is responsible for deciding the comparative negligence of the parties. Section 13–21–111(4), C.R.S. (1984 Cum.Supp.); *Holmes v. Gamble*, 655 P.2d 405 (Colo.1982). Only in the clearest of cases, in which the facts and the inferences therefrom are essentially undisputed and reasonable minds can draw only one inference from them, should relative fault be determined as a matter of law. *Transamerica Insurance Co. v. Pueblo Gas & Fuel Co.*, 33 Colo.App. 92, 519 P.2d 1201 (1973).

■ For these reasons, contrary to defendant's argument, in addressing such a motion, the trial court should not evaluate the evidence as would an additional juror, but rather must review the facts and inferences therefrom in a light which most favorably supports the jury's verdict. *Wesley v. United Services Automobile Ass'n, supra.*

■ Applying this criteria here, we conclude that the trial court erred in setting aside the jury's verdict. Evidence presented at trial was indicative of negligence by both plaintiff and defendant; hence, determination of any negligence and its relative allocation was a matter for the jury.

First, as to Hinrichs, the leader of the hike, the evidence demonstrates that, despite stringent rules to the contrary, he failed to keep the group together during the hike and did not watch and speak to all the hikers during the climb. Also, there was compelling evidence that an assistant leader should have been appointed to ensure that the group stayed together, but, Hinrichs failed to do so. Furthermore, despite an explicit requirement that he do so, Hinrichs failed to make an equipment and clothing check to ensure that participants on the hike were properly outfitted. Because part of the hike occurred in dangerous weather involving blowing snow and high winds, these failures were made more egregious.

On the other hand, defendant presented evidence which indicated plaintiff was also negligent in several ways. For example, the evidence indicates that plaintiff was careless in outfitting herself for the trip and in not taking sufficient nourishment and liquids during it. Also, there was evidence that plaintiff was negligent in becoming separated from her husband and another hiker on the return trip down the mountain. Further, there was evidence indicating that, after she became separated, she failed to follow proper procedures for reorienting herself and for helping fellow hikers locate her.

Primarily because of Hinrichs' conduct, CMC has conceded that it was negligent, but it argues that Voight's negligence, as a matter of law, was equal to or greater than its negligence. We disagree.

Given the extensive countervailing evidence of negligence on the part of both parties, this case presents a textbook example of a situation in which a jury must assess and allocate the negligence of the parties. Hence, entry of judgment notwithstanding the verdict was error.

## II.

■ The plaintiff next argues that the trial court erred in directing a verdict for CMC on her wanton/willful damage claim. We agree with the trial court.

While we must view the evidence in a light most favorable to the plaintiff, we agree with the trial court that the plaintiff did not provide sufficient evidence of wanton and reckless conduct by CMC to justify the submission of this issue to the jury. Even if we assume, arguendo, that Hinrichs' actions constituted wanton and reckless conduct, since there was no evidence that he was an officer or managing agent of CMC, CMC cannot be held liable for punitive damages. *See Jacobs v. Commonwealth Highland Theatres, Inc.,* 738 P.2d 6 (Colo.App.1986).

## III.

■ On cross-appeal, defendant claims that the trial court erred in not giving its requested intervening cause instruction.

While descending the last part of the mountain, plaintiff was with her husband, who was classified as a D level hiker (highest ability), and another person. It was during this period that she became separated from her husband and the other hiker.

Defendant argues that it was not foreseeable to Hinrichs, and thus to CMC, that Voight's husband, who was an excellent hiker, would abandon her. Hence, it argues that it was entitled to an instruction on the basis that his abandonment constituted an unforeseeable intervening cause. We disagree.

In *Webb v. Dessert Seed Co.,* 718 P.2d 1057 (Colo.1986), the court adopted the Re-

statement (Second) of Torts 442(B) (1965). It states:

"Where the negligent conduct of the actor creates or increases the risk of a *particular harm* and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is *intentionally* caused by a third person and is not within the scope of the risk created by the actor's conduct." (emphasis supplied)

Here, Voight's primary negligence claim against CMC was based on Hinrichs' failure to monitor and keep the hiking group together. Indeed, every expert who testified stated that hike leaders are obligated to keep the group together to prevent individual hikers from becoming separated and lost. The foreseeable risk or consequence of CMC failing to keep the group together was that hikers would be separated from the group, get lost, and consequently incur injuries.

Thus, the primary risk of being separated was cold-weather injuries such as frostbite. Therefore, even if we assume that Voight's husband was negligent in not maintaining contact with his wife, since the risk and resulting harm to plaintiff was exactly the same as that created by CMC's initial negligent conduct, it was not entitled to an unforeseeable intervening cause instruction.

Moreover, since there is no evidence that Voight's husband *intentionally* left his wife, we conclude the trial court did not err in refusing defendant's instruction on foreseeable intervening cause. *See Webb v. Dessert Seed Co., supra.* Restatement (Second) of Torts § 442(B) comment b (1979).

## IV.

■ Defendant next argues that the trial court erred in not permitting its counsel to cross-examine plaintiff's economist concerning the award of pre-judgment interest on a successful personal injury verdict. We find no error.

Defendant argues that, since the economist took into account several economic concepts, *i.e.*, present value, discounting, expected return on interest investment, inflation, etc., to establish the probable present value of plaintiff's economic losses, it should have been permitted to cross-examine the economist concerning the impact of the statutorily mandated pre-judgment interest on this evaluation. However, applying CRE 403, the trial court concluded this examination would prejudice or confuse the jury and, therefore, disallowed it. We agree that the trial court did not abuse its discretion in not permitting cross-examination of the economist on this issue.

Pre-judgment and post-judgment interest did not exist at common law and were created by statute. *Pierce v. United States,* 255 U.S. 398, 41 S.Ct. 365, 65 L.Ed. 697 (1921); *Clark v. Hicks,* 127 Colo. 25, 252 P.2d 1067 (1953); *Denver Horse Importing Co. v. Schafer,* 58 Colo. 376, 147 P. 367 (1914).

Pre-judgment interest, calculated at a fixed rate, is added to the jury's verdict by the court when it enters a monetary judgment. Section 13-21-101(1), C.R.S. (1987 Repl.Vol. 6A). If the judgment is appealed, then the interest rate varies according to a variable rate as defined in § 13-21-101(3), C.R.S. (1987 Repl.Vol. 6A). Therefore, if there is an appeal of the monetary judgment, the fixed interest rate is replaced by a variable and prospectively uncertain interest rate. Requiring the economist to incorporate these various interest rates in evaluating the economic loss complicates the determination and would likely confuse the jury. *See* CRE 403.

Pre-judgment interest is considered an additional item of compensatory damages and is, thus, not interest in the strictest sense. *Houser v. Eckhardt,* 35 Colo.App. 155, 532 P.2d 54 (1974), *aff'd sub nom. Security Insurance Co. v. Houser,* 191 Colo. 189, 552 P.2d 308 (1976). Also, the potential of pre-judgment interest being added to a judgment encourages settlements. *See Heid v. Destefano,* 41 Colo. App. 436, 586 P.2d 246 (1978). Thus, if the jury were informed of the availability of

pre-judgment interest, it could adversely affect two of the underlying purposes of the interest statute, *i.e.,* to compensate the damaged party for the loss of the use of the money and to encourage the settlement of cases.

Furthermore, informing the jury about pre-judgment interest creates the real possibility that, contrary to the statutory directive, the jury will lessen its award and thereby nullify the legislative intent to provide such interest. *See Callaham v. Slavsky,* 153 Colo. 291, 385 P.2d 674 (1963).

CMC implicitly concedes it would be improper to inform the jury about pre-judgment interest as it pertains to non-economic losses. But, the economic loss claims of Voight were only one aspect of her total claim for damages. Because of her overnight exposure to the severe weather, parts of both of plaintiff's feet, including her toes, were amputated. Thus, her economic loss claims were less than half of her total damage award.

Cross-examination of an economist about pre-judgment interest for economic losses would indicate to the jury that pre-judgment interest for non-economic damages also existed. Providing this information to the jury would be contrary to § 13–21–101's mandate that pre-judgment interest is to be added to the verdict by the trial court only after the damage award.

### V.

 Defendant next argues that the trial court erred in denying its motion to compel answers to deposition questions of the plaintiff. During plaintiff's deposition, she was questioned by defense counsel about conversations with her husband. Plaintiff objected to these questions on the basis that the information they sought was protected by the marital privilege of § 13–90–107(1)(a), C.R.S. (1987 Repl.Vol. 6A). The defendant moved unsuccessfully to compel the answers to these questions.

Citing *Petro–Lewis Corp. v. District Court,* 727 P.2d 41 (Colo.1986), defendant argues that the validity and scope of the marital privilege has been seriously questioned. Defendant argues that we should narrowly construe the privilege and should, therefore, determine that the trial court erred in not requiring plaintiff to answer defense counsel's questions about her conversations with her husband concerning this incident. We disagree.

In our view, the recent decisions of our supreme court interpreting § 13–90–107(1)(a) do not narrowly construe the marital privilege. *See Burlington Northern R.R. Co. v. Hood,* 802 P.2d 458 (Colo.1990); *In re Marriage of Bozarth,* 779 P.2d 1346 (Colo.1989); *People v. Lucero,* 747 P.2d 660 (Colo.1987).

We conclude that none of the exceptions to the marital privilege stated in § 13–90–107(1)(a) are applicable here, and thus, the trial court properly prohibited defense counsel from inquiring into conversations between plaintiff and her husband.

The other contentions of the parties' are without merit.

The dismissal of the punitive damages claim is affirmed, the judgment notwithstanding the verdict is reversed, and the cause is remanded with directions to reinstate the jury verdict and enter judgment thereon.

PIERCE and RULAND, JJ., concur.