**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Mary ACOSTA, Defendant–Appellant.**

**No. 92CA0151.**

Colorado Court of Appeals, Div. III.

April 22, 1993.

Rehearing Denied May 20, 1993.

Certiorari Denied Oct. 25, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timo-thy M. Tymkovich, Sol. Gen., Katherine M. Clark, Asst. Atty. Gen., Denver, for plain-tiff-appellee.

David F. Vela, State Public Defender, Joan E. Mounteer, Deputy State Public De-fender, Denver, for defendant-appellant.

Opinion by Judge CRISWELL.

Defendant, Mary Acosta, was convicted of vehicular assault while under the influ-ence of alcohol, vehicular assault by driv-ing recklessly, and driving under the influ-ence of alcohol. She was placed on proba-tion for five years. She appeals from the judgments of conviction and from the court's order of restitution. We affirm the judgments of conviction, but remand the cause for the court to reconsider its order of restitution.

The vehicular accident out of which the charges against defendant arose occurred in the evening hours as defendant was driving from Manitou Springs to Canon City. As traffic in the opposite lane ap-proached defendant, her vehicle slid into that lane, striking the vehicle that the vic-tim was driving.

Defendant admitted having at least one and one-half glasses of wine at dinner shortly before she left Manitou Springs. In addition, the People introduced the testi-mony of witnesses who observed defen-dant's driving before the accident, testimo-ny as to her condition and reaction after the accident, and the results of a breathaly-zer test that purported to establish that defendant had 0.139 grams of alcohol per 210 liters of breath shortly after the acci-dent.

In contrast, defendant testified that she was not under the influence at the time of the accident. She testified that, as traffic from the opposite direction approached, she drove her vehicle to the far right edge of the roadway where her tire encountered some gravel. According to her, she turned her front wheels to the left, but overcor-rected, and as a result, her vehicle went

into a slide into the opposite lane, where the two vehicles collided.

In convicting defendant of the three offenses described above, the jury acquitted her of a fourth charge, driving with an excessive blood or breath alcohol content.

## I.

■ Defendant first argues that the prosecution denied her right to procedural due process of law by its failure to preserve a second sample of her breath at the time the breathalyzer test was administered to her and its failure to keep in storage the victim's automobile. In both instances, we disagree.

In *People v. Greathouse*, 742 P.2d 334 (Colo.1987), our supreme court held that a due process violation based upon a failure to preserve evidence can be established only by demonstrating, among other things, that the lost evidence was "material." And, evidence will be considered to be material only if it possessed an exculpatory value that was apparent before it was lost and if its nature was such that the defendant would be unable to obtain comparable evidence by other reasonably available means.

After the *Greathouse* decision, however, the United States Supreme Court held that, in those instances in which there is a failure to preserve "evidentiary materials of which no more can be said than it could have been subjected to tests, the results of which *might* have exonerated the defendant," no due process violation occurs unless the failure to preserve the evidence results from the bad faith of the authorities. *Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988) (emphasis supplied). Hence, "unless a criminal defendant can show bad faith on the part of police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. at 58, 109 S.Ct. at 337, 102 L.Ed.2d at 289. *See also People v. Franklin*, 782 P.2d 1202 (Colo.App.1989).

The record here demonstrates that the failure to obtain a second breath sample resulted from the testing officer's good faith failure to find the necessary supplies for a second sample and that the return of the victim's vehicle to her insurer came only after reasonable notice to defendant of such intended action. Defendant took no steps either to cause the vehicle to be inspected or to bring on for hearing her motion to restrain the People from delivering the vehicle. In addition, this record fails to disclose that any further testing either of a second breath sample or of the victim's vehicle would have produced exonerating evidence for defendant; at the very best, it can only be said that it "might" have.

Under these circumstances, we conclude that this evidence does not meet the *Greathouse* requirement for materiality and that this record cannot support a *Youngblood* conclusion of bad faith. Hence, no due process denial resulted in either instance. *See People v. Humes*, 762 P.2d 665 (Colo. 1988) (because there was no showing of exculpatory value, unavailability of second blood sample was not material). *See also People v. Franklin, supra.*

## II.

Defendant next argues that the evidence was legally insufficient to establish her guilt of the three offenses of which she was convicted and that the jury verdict convicting her of driving under the influence and vehicular assault while driving under the influence are inconsistent with defendant's acquittal of driving with an excessive blood or breath alcohol content. We reject both arguments.

Defendant was charged with four counts: vehicular assault while under the influence in violation of § 18–3–205(1)(b)(I), C.R.S. (1992 Cum.Supp.); vehicular assault by driving recklessly in violation of § 18–3–205(1)(a), C.R.S. (1986 Repl.Vol. 8B); driving under the influence in violation of § 42–4–1202(1)(a), C.R.S. (1992 Cum.Supp.);

and driving with an excessive blood or breath alcohol content in violation of § 42–4–1202(1.5)(a), C.R.S. (1992 Cum.Supp.).

In order to convict defendant either of the crime of vehicular assault while under the influence or of driving under the influence in violation of § 42–4–1202(1)(a), it was necessary for the People to prove, among other things, that she operated a vehicle at a time when alcohol had so affected her mental or physical abilities that she was substantially incapable of "exercising clear judgment, sufficient physical control, or due care in the safe operation of a vehicle." *See* § 18–3–205(1)(b)(IV), C.R.S. (1992 Cum.Supp.) and § 42–4–1202(1)(f), C.R.S. (1992 Cum.Supp.).

In contrast, the crime prohibited by § 42–4–1202(1.5)(a) requires no such proof. Rather, such offense occurs if a person drives a vehicle and, at the time of such driving or within two hours thereafter, an analysis of the driver's blood or breath discloses the specified level of alcohol within the person's system. While extrinsic evidence of the person's actions may be considered to determine whether the blood or breath test resulted in an accurate analysis, § 42–4–1202(1.5)(b), C.R.S. (1992 Cum. Supp.), there is no requirement to prove that the level of alcohol had any effect upon the driver's mental or physical abilities.

■ Here, the People's evidence to support the three alcohol-based offenses took two forms. First, it introduced the results of defendant's breath analysis which indicated a level of 0.139 grams of alcohol per 210 liters of breath. In addition, it presented the testimony of both lay witnesses and law enforcement agents who testified that defendant was driving erratically before the collision and that she exhibited some symptoms of being under the influence after the collision.

Giving the People the benefit of all reasonable inferences, *see People v. Brassfield*, 652 P.2d 588 (Colo.1982), we conclude that this evidence was sufficient to establish that, at the time of the collision, defendant's physical or mental capacities had been adversely affected by her previous consumption of alcohol.

■ Further, such a conclusion is not inconsistent with her acquittal of the other misdemeanor charge. The jury could well have rejected the reliability of the breath test to show beyond a reasonable doubt an excessive level of alcohol in defendant's breath. At the same time, given defendant's admission of her prior consumption of alcohol, the jurors could reasonably have concluded that defendant's mental and physical capacities had been so affected that she had been "under the influence," irrespective of the precise amount of alcohol that she had consumed.

Under such circumstances, the verdicts reveal no inconsistency. *See People v. Lutz*, 803 P.2d 184 (Colo.1990).

### III.

■ We also reject defendant's argument that the court gave an improper supplemental instruction on the definition of proximate cause.

In the court's initial instructions to the jurors, they were advised that, in order to find defendant guilty of the crime of vehicular assault while under the influence of alcohol, it would be necessary to find that defendant's driving under the influence was the "proximate cause" of serious bodily injury. For this purpose, the jurors were instructed that a "proximate cause" was:

A cause which in natural and probable sequence produced the claimed injury. It is a cause without which the claimed injury would not have been sustained.

After commencing deliberations, the jurors advised the court that they were confused over this definition. The court then questioned the jurors in open court and in the presence of counsel as to the cause of

their confusion and was informed that they were uncertain whether a proximate cause had to be the "primary" cause or simply a "contributing" cause.

The court then gave an additional instruction in the following form:

'[P]roximate cause' means a cause but for which the injuries would not have occurred. The 'proximate cause' does not have to be the only cause or the last or nearest cause. You are reminded that you must consider this instruction as well as all the instructions of the Court in arriving at your verdicts.

Defendant complains, first, that the court should not have provided any additional instruction. Second, she argues that the instruction given was legally unsound. We disagree.

First, even if we were to assume that *Leonardo v. People,* 728 P.2d 1252 (Colo. 1986) did not *require* the giving of an additional instruction here, there can be no prejudice occasioned by such additional instruction if it is a correct and applicable statement of the law.

Second, the instruction given adopted the essential definition of "proximate cause" that is contained in the pattern civil jury instructions. *See CJI–Civ.3d* 9:27, 9:28, and 9:29 (1989). This definition is based upon prior Colorado jurisprudence that requires any "cause" of an injury to be one "but for" which no injury would have resulted.

Defendant does not assert that the concept of proximate cause for a criminal offense differs from the concept as developed under civil tort law. *See People v. Rostad,* 669 P.2d 126 (Colo.1983). She argues, however, that the true test is not the "but for" test, but whether a defendant's action or omission was a "substantial factor" in producing the injury.

Defendant made no such argument in the trial court. While counsel interposed a general objection to the additional instruc-

tion, saying that it did not properly state the law, he gave no basis for such an assertion. Hence, defendant's argument, first made before this court, must be tested by the plain error standard. *See* Crim.P. 30 ("Only the grounds ... specified [in the objection made to an instruction] shall be considered in a motion for new trial or on review."); *People v. Quintana,* 701 P.2d 1264 (Colo.App.1985).

Further, defendant's argument assumes that the People were required to prove that it was defendant's *intoxication* that was the proximate cause of the victim's injury. This is an inaccurate assumption.

In *People v. Garner,* 781 P.2d 87 (Colo. 1989), our supreme court held that, under the vehicular homicide statute, it is not necessary to establish that the intoxication was the proximate cause of the victim's death. Rather, "the prosecution must prove that the defendant voluntarily drove while intoxicated and that his *driving* resulted in the victim's death." *People v. Garner, supra* at 89 (emphasis supplied). Thus, there need not even be proof that the defendant was negligent in his driving. *People v. Garner, supra. See also People v. Rostad, supra.*

The statute under which defendant was charged here is substantially identical to the vehicular homicide statute at issue in *Garner,* § 18–3–106(1)(b)(I), C.R.S. (1986 Repl.Vol. 8B), except that the vehicular homicide statute requires that death, rather than serious bodily injury, result from the accident. Hence, the same analysis used in *Garner* is applicable to the vehicular assault statute.

Thus, whether the victim's injuries here were caused by defendant's "overcorrection" uninfluenced by her consumption of alcohol, or whether alcohol played a part, is irrelevant. In either event, it was defendant's *driving* after consuming alcohol that was, as the jury found, a proximate cause of the accident. And, given the circumstances, if defendant's *driving* played *any* part in causing the victim's injuries, it nec-

essarily constituted a substantial cause of those injuries, as a matter of law.

Hence, no plain error occurred in the giving of this supplemental instruction.

■ In addition, we hold that the vehicular assault statute, § 18–3–205(1)(a) and (b), like the present vehicular homicide statute, § 18–3–106(1)(a) and (b), C.R.S. (1992 Cum. Supp.), sets forth two alternate ways of committing the singular crime of vehicular assault; it does not create two separate crimes. *See People v. Viduya,* 703 P.2d 1281 (Colo.1985). Hence, because the jury convicted defendant of vehicular assault while under the influence in accordance with proper instructions, we need not decide whether such instructions properly informed the jurors as to the law pertaining to vehicular assault by driving recklessly.

### IV.

Defendant finally argues that the trial court erred in its order of restitution by failing to consider the effect of a prior settlement agreement between defendant and the victim and by awarding, as a part of its restitution order, interest on the pecuniary loss allegedly sustained by the victim. We agree only in part.

■ Restitution in conjunction with a probation order is governed by § 16–11–204.5(1), C.R.S. (1986 Repl.Vol. 8A). Pursuant to that statute, the court must require defendant to make restitution to the victim "for the actual damages which were sustained." Hence, the existence of a civil claim asserted by a victim against the defendant does not serve to vitiate the trial court's duty to order restitution to that victim. *People v. Johnson,* 780 P.2d 504 (Colo.1989). However, payment of restitution is authorized only to compensate the victim for the actual pecuniary damages sustained as a direct result of the defendant's conduct. *People v. Borquez,* 814 P.2d 382 (Colo.1991).

■ Therefore, in those instances in which a civil claim has been asserted against the defendant and a settlement reached prior to the time that the criminal court considers the issue of restitution, that court must take into consideration any amounts which have been, or will be, received by the victim from, or on behalf of, the defendant. Under the statute, the court must first determine the total amount of the victim's actual, pecuniary damages and then subtract from that amount any proceeds attributable to those damages received by the victim from the settlement of the civil claim. The order of restitution should be limited to this difference. *See People in Interest of T.R.,* 860 P.2d 559 (Colo.App.1993).

■ Here, the trial court specifically found that the victim had suffered pecuniary damage in an amount of at least $44,000. In addition, there were representations made that the victim had received a financial settlement totalling some $200,000 from some insurance company, although the record does not make clear the exact source of those funds. The court made no findings, however, whether the $44,000 in pecuniary damages was in addition to or was included within the prior settlement received by the victim.

The court also found that defendant did not have the financial capability of paying all of the damages suffered by the victim. Therefore, it ordered her to pay the sum of $7,500, but directed that such sum incur interest at the rate of 9% per annum, compounded annually.

We conclude that these findings are insufficient to support the court's order of restitution.

First, the findings are not specific in determining whether the $44,000 in damages were included in the previous settlement. While we recognize that the record itself is unsatisfactory upon this subject, the findings must address this matter, and the court, upon remand, is authorized to require the production of further evidence upon this point.

Second, if a victim is required to borrow money as a result of the criminal offense of another, it has been recognized that the amount of interest paid constitutes pecuniary damage to the victim, so that an order of restitution may include such sum. *People v. Engel,* 746 P.2d 60 (Colo.App. 1987). At the same time, however, assessing interest upon a restitution order which itself includes an award of interest is improper. *People v. Engel, supra.*

If an individual is wrongfully deprived of money by a criminal defendant, either by having such money wrongfully taken from him or her or by being required to expend money for purposes for which it would not otherwise have been spent (such as for medical care or repair services, for example), it can be persuasively argued that that individual, or anyone expending the money on his or her behalf, has sustained pecuniary damages because of the loss of the use of the money involved. And, it is to compensate for such loss of use of money that interest is awarded, in appropriate cases, as damages. *See Voight v. Colorado Mountain Club,* 819 P.2d 1088, 1093 (Colo. App.1991) (one purpose for award of interest as damages is "to compensate the damaged party for the loss of the use of money"); *Prospero Associates v. Redactron Corp.,* 682 P.2d 1193 (Colo.App.1983).

Further, it is not always necessary that a statute specifically authorize an award of interest in order for a judicatory tribunal to make such an award. *See Lanes v. State Auditor's Office,* 797 P.2d 764 (Colo.App.1990) (statute allowing Personnel Board to grant "appropriate relief" to an improperly discharged state employee authorizes Board to award interest on back pay); *People v. Engel, supra.*

We conclude, therefore, that under appropriate circumstances, a victim's loss of use of money can be "pecuniary damage" under the restitution statute and that interest may be awarded as compensation for such damage. Here, however, be-

cause the court's findings do not make clear whether the victim was actually deprived of the use of any money, its award of interest cannot be sustained.

The judgments are affirmed, but the cause is remanded for the court's reconsideration of the subject of restitution consistent with the views expressed in this opinion.

STERNBERG, C.J., and NEY, J., concur.