The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Henrietta VALENZUELA, Defendant–Appellant.

No. 92CA0840.

Colorado Court of Appeals, Div. II.

Nov. 4, 1993.

Rehearing Denied Jan. 6, 1994.

Certiorari Granted June 6, 1994.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Deborah Isenberg Pratt, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Beth L. Krulewitch, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge NEY.

Defendant, Henrietta Valenzuela, appeals from the trial court's order of restitution imposed in conjunction with her sentence to probation. We affirm in part, reverse in part, and remand with instructions.

Defendant applied for and received Aid To Families With Dependent Children (AFDC) and food stamps through Jefferson County from December 1989 through June 1990. She was charged with two counts of theft when authorities learned that she was employed and was not, therefore, legally entitled to these benefits.

Defendant entered a guilty plea to an added third count of attempted theft, and the initial charges were dismissed. The court

sentenced her to four years of probation and ordered that she pay restitution in the sum of $6,785.74 as a condition of probation. Defendant did not dispute that she owed $5,779 in restitution for benefits fraudulently obtained, but challenged the court's authority to add $1006.74 interest to that amount.

The court based its determination upon § 26–2–128(1), C.R.S. (1989 Repl.Vol. 11B), which provides:

> [A]ny fraudulently obtained public assistance or fraudulently obtained overpayments shall be recoverable and payable in proportionate shares as provided in section 26–1–112(2)(b), and interest shall be charged and paid to the county department on any sum fraudulently obtained calculated at the legal rate and calculated from the date the recipient obtained such sum to the date such sum is recovered.

The court also relied upon § 5–12–102(1)(b), C.R.S. (1992 Repl.Vol. 2), which sets the legal interest rate at 8%.

The factual circumstances presented are not materially in dispute. Here, public assistance, which under § 26–2–103(7), C.R.S. (1989 Repl.Vol. 11B) includes AFDC benefits and food stamps, was distributed to defendant through programs administered by the Jefferson County Department of Social Services.

## I.

■ Defendant contends that the sentencing court erred by including, within its order of restitution, the sum for interest. Central to this argument is her contention that neither § 26–2–128(1) nor § 5–12–102(1)(b) is applicable in a criminal action. We do not agree.

■ A sentencing court must order restitution as a condition of probation in every case in which the victim sustained actual damages. Section 16–11–204.5(1), C.R.S. (1986 Repl.Vol. 8A). *See People v. Phillips,* 732 P.2d 1226 (Colo.App.1986).

■ The burden is on the prosecution to prove that the amount of restitution sought is attributable to the defendant's conduct, *People v. Engel,* 746 P.2d 60 (Colo.App.1987),

and the amount of restitution ordered may not be based on mere speculation. *Cumhuriyet v. People,* 200 Colo. 466, 615 P.2d 724 (1980).

■ Further, if, as here, a victim is wrongfully deprived of money by a criminal defendant, the inclusion of interest upon the money so taken may be a proper element in the determination of the victim's actual loss. *People v. Acosta,* 860 P.2d 1376 (Colo.App. 1993). This is because the loss of the use of the money involved results in pecuniary loss for which the award of interest may compensate. *See Voight v. Colorado Mountain Club,* 819 P.2d 1088 (Colo.App.1991).

■ In determining the issue of restitution, the sentencing court is not required to conduct a mini-trial on the issue of damages. *People v. Johnson,* 780 P.2d 504 (Colo.1989). Additionally, because the sentencing court is not bound by the strict rules of civil damages in fixing the amount of restitution, *People v. Johnson, supra,* and because interest may be a proper element within the restitution calculation, *People v. Acosta, supra,* we conclude that § 26–2–128(1), in conjunction with § 5–12–102(1)(b), properly may be used by the court in determining the amount of restitution to be paid by the defendant.

Contrary to defendant's contentions, we find no language in § 26–2–128(1) to indicate that this statute is applicable only to civil actions. Rather, this statute expressly allows recovery of the amount of fraudulently obtained public assistance with interest thereon, without restriction as to the method by which recovery may be had.

■ We further agree with the sentencing court that the "legal rate" contemplated by § 26–2–128(1) is that set forth in § 5–12–102(1)(b). That is, in the absence of evidence that the interest lost by the victim differed from the amount calculated by application of the statutory rate, or of an agreement pertaining to interest, the interest to be assessed for purposes of restitution shall be determined at the rate of 8% compounded annually from the date that the monies were wrongfully obtained.

## II.

Defendant further contends that the evidence was insufficient to prove that Jefferson County suffered actual pecuniary loss beyond the $5,779 she received in benefits. We disagree.

Defendant argues that even if defendant had not received the AFDC benefits, it is possible that some other recipient would have received these funds. In this latter event, no loss of interest would have been sustained by the county general fund account. We reject this contention as being based entirely upon speculation without any evidentiary basis in the record.

## III.

██ Defendant asserts that the trial court abused its discretion in its restitution order by ignoring her ability to pay. We agree.

██ We recognize generally that it is not required that the sentencing court make express findings concerning the ability of the defendant to pay restitution. *People v. Quinonez*, 735 P.2d 159 (Colo.1987). However, the amount of restitution ordered must be tempered by considerations of defendant's financial ability to pay, her duty of support owed to her dependents, and other outstanding family responsibilities. *People v. Johnson, supra.*

Here, the record indicates that defendant, at the time of the offense, was an impoverished 40–year–old single mother of five children, who received no child support. During the period of her violation, she was earning $1,000 a month, over one-half of which was required for the family's rent. Additionally, because of a similar violation, she will owe to another county restitution represented to be approximately $25,000.

Notwithstanding these circumstances, the sentencing court appears to have ignored the requirements of § 16–11–204.5, C.R.S. (1986 Repl.Vol. 8A), which states:

> The amount of such restitution [as a condition of probation] shall be based upon the actual, pecuniary damages sustained by the victim, the ability of the defendant to pay, and the defendant's obligations to support [her] dependents and to meet other family obligations.

Rather than exercise its discretion as to this issue, the sentencing court ordered that the terms of payment be determined by the probation department. The order further noted that an extension of probation for this purpose might be necessary.

Thus, although the sentencing court need not make findings concerning the requirements of § 16–11–204.5, *People v. Quinonez, supra,* we conclude that, under the specific facts at issue here, the court erred in its failure to take into consideration any element except the victim's pecuniary loss. *See* § 16–11–204.5; *cf. People v. Powell,* 748 P.2d 1355 (Colo.App.1987).

The order of restitution is affirmed insofar as it sets the amount of loss, including interest, sustained by the victim. It is reversed as to the amount of restitution ordered, and the cause is remanded for further proceedings consistent herewith.

CRISWELL, J., concurs.

REED, J., dissents.

Judge REED, dissenting.

I respectfully dissent.

Two types of public assistance, AFDC benefits and food stamps, were fraudulently obtained by the defendant here. The majority concludes that § 26–2–128(1), C.R.S. (1989 Repl.Vol. 11B) and § 5–12–101(1)(b), C.R.S. (1992 Repl.Vol. 2) are applicable in the computation of interest to be included in the order of restitution as to both types of benefits and that the interest calculated therein commences from the date that each benefit was received.

While I agree that this is correct as to the AFDC benefits, I disagree that § 26–2–128(1) applies as to the food stamp benefits.

Here, both the AFDC benefits and the federal food stamps received by defendant were distributed to her through programs administered by the Jefferson County Department of Social Services. However, the food stamp program is funded exclusively by the federal government, whereas the funds for the AFDC benefits are provided partially by the state and by the county.

By established procedure, based upon the county's written estimate, the state deposits to the county general fund, an interest bearing account, its share of the AFDC benefits to be disbursed to recipients the following month. Thus, both the state and county contribute to the payment of the AFDC benefits and the wrongful disbursement of them results in a loss of interest to the county general fund.

The food stamps received by defendant are issued solely by the federal government. Except for the county's role in the administration of that program, neither it nor the state makes any contribution or payment of benefits to the recipient. However, if, as here, the benefits derived from the food stamps are found to have been fraudulently obtained by a recipient, the county reimburses the federal government for the amount of those benefits together with interest charged by the federal government.

While the principal amount of the food stamp benefits received by defendant is not in dispute here, the record is silent as to the rate or amount of interest, if any, which the county paid to the federal government or the date upon which it was paid. The only witness who testified admitted that the amount of the interest paid would have been computed by the county treasurer and that he had no personal knowledge of the same.

As noted by the majority, the sentencing court must order restitution as a condition of probation if the victim sustained actual damages, *People v. Phillips,* 732 P.2d 1226 (Colo. App.1986), and the amount of restitution may not be based upon speculation. *Cumhuriyet v. People,* 200 Colo. 466, 615 P.2d 724 (1980).

It is the duty of the sentencing court, in fixing restitution, to determine the victim's *actual monetary loss.* In so doing, the court is not required to determine restitution "in accordance with the strict rules of damages applicable to a civil case." *People v. Johnson,* 780 P.2d 504, 507 (Colo.1989). Further, if interest is paid by the victim because of defendant's acts, the amount of interest included in the restitution order must reflect the actual interest paid. *People v. Engel,* 746 P.2d 60 (Colo.App.1987).

Based upon the record here, the county and state suffer no monetary loss relative to food stamps until the county is required to reimburse the federal government from its general fund for the food stamps fraudulently obtained. At that juncture, the obligation cast upon the county is to pay the value of those food stamps together with an unknown amount of interest charged by the federal government. In my opinion, this sum, together with interest accrued thereon from the time of reimbursement, computed pursuant to § 5–12–101(1)(b), is the proper measure of the victim's actual loss.

Except under circumstances not here present, § 26–2–128(1) provides in pertinent part:

[A]ny previously paid excess public assistance to which the recipient was not entitled shall be recoverable by the county as a debt due to the state and the county *in proportion to the amount of public assistance paid by each respectively;* except that any fraudulently obtained public assistance or fraudulently obtained overpayments shall be recoverable and payable in proportionate shares as provided in section 26–1–112(2)(b), and interest shall be charged and paid to the county department on any sum fraudulently obtained calculated at the legal rate and calculated from the date the recipient obtained such sum to the date such sum is recovered. (emphasis supplied)

I disagree with the majority that the amount of the victim's loss, for purposes of criminal restitution relating to fraudulently obtained food stamps, is properly determined by use of that statute. I do so for two reasons.

First, by its language, § 26–2–128(1) provides that the excess public assistance is recoverable "as a debt due to the state and the county in proportion to the amount of public assistance *paid by each respectively."* (emphasis supplied) Thus, payment of the benefit by the county or the state is a necessary prerequisite to the statute's application.

Because food stamps are funded exclusively by the federal government, with no contribution by either the state or county at the time the stamps are distributed, I would hold that the claim for restitution, as to food stamp benefits, is not within the purview of § 26–2–128(1).

Secondly, and of more significance, even if we assume that the claim for restitution for food stamps falls within the statutory language of § 26–2–128(1), I conclude that any computation of interest thereunder is only speculative of the county's actual monetary loss. There is nothing in the record to indicate that the rate of interest charged by the federal government, as part of its reimbursement claim, bears any relationship to the rate of interest calculated and applied, pursuant to § 26–2–128(1), retroactively to the date that the stamps were received.

Thus, since the assessment of interest must reflect the actual interest paid, *People v. Engel, supra,* and since the amount of interest actually paid to the federal government is readily ascertainable, I would hold that, as to the food stamp benefits, the sentencing court erred in using § 26–2–128(1) to compute the interest due thereon as part of its order of restitution, and I would vacate that portion of the order.

I would further direct, as part of the remand here, that the actual amount of reimbursement to the federal government be ascertained, after further hearing, and that amount, plus interest accrued thereafter pursuant to § 5–12–101(1)(b), constitute the amount of restitution due for the food stamp portion of the court's order.