The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

William J. LUCERO, Defendant–
Appellant.

No. 97CA0680.

Colorado Court of Appeals,
Div. IV.

May 13, 1999.

Certiorari Denied Oct. 4, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Koehler, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RULAND.

Defendant, William J. Lucero, appeals from the judgments of conviction entered upon jury verdicts finding him guilty of numerous offenses. These offenses include three counts of vehicular homicide (DUI), three counts of vehicular homicide (reckless), three counts of careless driving resulting in death, thirty counts of vehicular assault (DUI), and thirty counts of vehicular assault (reckless). Defendant was also convicted of failure to drive on the right side of the road and careless driving, plus two counts of third degree assault (at-risk adults) and eight counts of third degree assault based upon the use of an automobile as a deadly weapon. With reference to non-driving offenses, defendant was convicted of possession of a schedule II controlled substance (cocaine), possession of marijuana, and possession of drug paraphernalia. We affirm in part, vacate in part, and remand with directions.

While defendant was driving on a two-lane mountain highway, he fell asleep at the wheel. His van crossed over the center line and collided with an oncoming tour bus. Three bus passengers were killed, thirty were seriously injured, and ten suffered bodily injury.

Medical testing conducted after the accident failed to reveal alcohol in defendant's blood. However, a trace amount of marijua-

na was found, along with trace amounts of "parent" cocaine and cocaethylene.

## I.

Defendant contends that he was entitled to a judgment of acquittal on the vehicular homicide (DUI) and vehicular assault (DUI) charges. He argues that his motion to that effect should have been granted because the evidence was insufficient to prove that he was "under the influence."

In a related contention, defendant maintains that the trial court erred in refusing his jury instruction which stated that a person is not under the influence of drugs unless such substances are having a contemporaneous psychoactive effect. We are not persuaded by either contention.

## A.

In assessing defendant's contention relative to the sufficiency of the evidence, we must first determine the applicable legal standard. Both the vehicular homicide and vehicular assault statutes define "driving under the influence" as:

Driving a vehicle when a person has consumed [alcohol and/or drugs], which ... *affect such person to a degree that such person is substantially incapable, either mentally or physically, or [both],* of exercising clear judgment, sufficient physical control, or due care in the safe operation of a vehicle.

Sections 18–3–106(1)(b)(IV) and 18–3–205(1)(b)(IV), C.R.S.1998 (emphasis supplied).

However, defendant's tendered jury instruction stated that:

An individual is not 'under the influence' or 'impaired' by the ingestion of any drug, combination of drugs, or combination of drugs and alcohol unless such influence or impairment is caused by the *psychoactive properties* of the substance or substances at the time of the operation of the motor vehicle. (emphasis supplied)

In essence then, defendant argues that a state of intoxication occurs under the statute only while the drugs or alcohol are having

the direct euphoric effect for which they are taken by the user. We disagree.

In *Bieber v. People*, 856 P.2d 811 (Colo. 1993), defendant had not used drugs for at least two days prior to the commission of a homicide. He claimed, however, that the effects of prior drug use caused him to commit the crime and he requested jury instructions on a "settled insanity" defense.

Our supreme court determined that the impact of his long-term use of drugs continued to effect a disturbance of his mental or physical capacities and that this continued effect was to be regarded as intoxication. *See* § 18–1–804(4), C.R.S.1998. The court stated:

We do not see any qualitative difference between a person who drinks or takes drugs knowing that he or she will be momentarily 'mentally defective' as an immediate result, and one who drinks or takes drugs knowing that he or she may be 'mentally defective' as an eventual, long-term result.

*Bieber v. People, supra,* 856 P.2d at 816.

■ In our view, given the broad language of the statute, similar reasoning applies to defendant's argument here. In sum, if, as here, drug or alcohol use affects a person to the extent that he or she is incapable of mentally or physically exercising the judgment, physical control, and care required by the statute, then that person is intoxicated. And, this is so notwithstanding what alcohol or drug residue may be detected in defendant's body. Hence, we conclude that the trial court properly refused defendant's proposed instruction.

## B.

Because there was expert testimony that defendant's exhausted condition just prior to the accident was the result of his earlier ingestion primarily of cocaine, we conclude that the motion for directed verdict was also properly denied.

■ Specifically, with reference to actual drug use, there was testimony that, the day before the accident, defendant was in possession of drugs and drug paraphernalia and

appeared to be under the influence. Drugs and drug paraphernalia were also found in his van after the accident. The jury was informed of defendant's admission that he had consumed drugs and that, although defendant knew he was "dozing off," he continued to drive because he "thought he could make it."

Further, a toxicologist called by the prosecution testified that cocaine causes the user's body to go through a tripartite cycle. First, the user experiences a "rush," when the initial euphoric effect is registered on the central and peripheral nervous systems. The second phase is called the "run," during which the user ingests additional drugs to escape dysphoria and regain euphoria. The final phase occurs when the body can no longer withstand the "run" and the user, as here, will "crash" experiencing extreme fatigue and exhaustion.

Based upon data obtained from tests conducted after the accident on defendant's urine, the toxicologist opined that defendant's prior consumption of cocaine was either "a binge or [indicative of] a heavy chronic user over a long period of time." The expert also stated that defendant's actions just prior to the accident "were influenced by the effects of the cocaine."

This evidence must be viewed in the light most favorable to the prosecution and the jury's verdict. *See People v. Thompson,* 950 P.2d 608 (Colo.App.1997). Viewed in this context, we conclude that the evidence was sufficient to permit a jury to infer that defendant was legally intoxicated under the statute at the time his van collided with the bus.

## II.

■ Defendant next contends that the trial court erred in failing to suppress the drugs and drug paraphernalia seized during a search of his van. The parties agree that the warrant itself was deficient. And, defendant argues that, because the record contains no evidence that the supporting affidavit physically accompanied the warrant during its execution, his convictions must be vacated. We do not address this contention.

To preserve this claim for appeal, defendant must have raised the issue initially as grounds for his motion in the trial court. *See People v. Staton,* 924 P.2d 127 (Colo.1996). At the suppression hearing, however, defendant argued only that it was the facial insufficiency of the warrant itself which violated the Fourth Amendment particularity requirement.

The trial court found the affidavit very specific in detailing the items to be seized. Further, because the affidavit formed the basis for the warrant, the court concluded that it therefore validated and made the warrant effective to authorize the search.

Neither party addressed whether the affidavit was attached to the warrant. Therefore, as defendant raises this issue for the first time on appeal, we decline to address it. *See People v. Staton, supra.*

## III.

We also reject defendant's contention that the trial court erred in failing to instruct the jury on driving under the influence (DUI) and driving while ability impaired (DWAI) under §§ 42–4–1301(1)(a) & (b), C.R.S.1998, of the Motor Vehicle Code. Defendant argues that under §§ 18–3–106(1)(a) & (b), C.R.S. 1998, these instructions were properly requested as lesser-included offenses of vehicular homicide (DUI) and vehicular assault (DUI). However, we conclude that the failure to instruct on these offenses, if error, was harmless. *See C.A.R. 35(e).*

In *People v. Garner,* 781 P.2d 87, 89 (Colo. 1989), our supreme court confirmed that vehicular homicide or assault while intoxicated were strict liability crimes, and stated:

> [T]he conduct at issue for purposes of proximate cause is the voluntary act of driving while intoxicated. The statute does not require evidence that the intoxication affected the driver's operation in a manner that results in a collision.

■ Here, it was undisputed that a collision occurred and that three deaths resulted as well as serious bodily injury to 30 passengers. Hence, the only issues for resolution by the jury in this context were whether defendant was intoxicated or impaired. Un-

der such circumstances, we view the failure to provide a separate instruction on the other offenses to be harmless.

## IV.

Defendant next contends that the trial court erred in refusing to instruct the jury on the presumption arising from the analysis of defendant's blood pursuant to §§ 18–3–106(2) and 18–3–205(2), C.R.S.1998. We disagree.

■ The instructions given to the jurors should include the rules of law necessary for their guidance in resolving the questions submitted for determination. However, instructions that are either irrelevant, misleading, or confusing to the jury must be avoided. *See People v. Silva,* —— P.2d —— (Colo.App. No. 97CA0962, April 15, 1999).

Here, as noted, the prosecution's theory of the case was that defendant, after "bingeing" on drugs and some alcohol, was in the "crash" phase of a cocaine high, which caused his body to shut down. Consequently, defendant fell asleep while driving.

Neither party contested the blood alcohol content of defendant's blood. Rather, both counsel informed the jury that blood tests determined defendant's blood alcohol level to be zero. Further, the prosecutor argued that this was not a standard DUI case and that defendant was not under the influence of alcohol per se.

■ Accordingly, an instruction on the statutory presumption would have only confused or diverted the minds of the jurors from the critical issues for resolution. *See People v. Martinez,* 780 P.2d 560 (Colo.1989). Hence, we conclude that the court's ruling was correct.

## V.

Because defendant was charged with criminal negligence in the commission of the third degree assault counts, the jury was required to find that the injuries were specifically caused by a deadly weapon. *See* § 18–3–204, C.R.S.1998. The jury was also instructed that:

'DEADLY WEAPON' means any of the following, which in the manner it is used or

intended to be used is capable of producing death or serious bodily injury: any weapon, device instrument, material or substance, whether animate or inanimate. *A motor vehicle may be considered to be a deadly weapon.* (emphasis supplied)

Defendant contends that the emphasized portion of the instruction addressing a motor vehicle improperly directed a verdict on that issue. We disagree.

■ Whether an article is a deadly weapon may present a factual issue because of the article's very character or the circumstances of its use. In such a case, the question should be left to the jury under an instruction as to what may constitute a deadly weapon. *See J.D.C. v. District Court,* 910 P.2d 684 (Colo.1996). We view the quoted instruction as satisfying this requirement because of the use of the word "may."

## VI.

■ Finally, we are not persuaded by defendant's last contention of trial court error in the elements instruction on possession of drug paraphernalia. Specifically, he argues for the first time on appeal that the statutory elements of the crime were revised by the General Assembly in 1992 but not incorporated into the instruction in terms of requiring a finding that defendant knew he was putting the drug paraphernalia to an illegal use.

As amended in 1992, § 18–18–428, C.R.S. 1998, provides that:

A person commits possession of drug paraphernalia if he possesses drug paraphernalia and knows or reasonably should know that the drug paraphernalia could be used under circumstances in violation of the laws of this state.

Here, the jury was not specifically instructed that it must find that defendant knew or should know that the drug paraphernalia could be used in violation of state law. However, the jury was instructed in a separate instruction that:

'DRUG PARAPHERNALIA' means all equipment, products, and materials of any kind *which are used,* ... for a controlled

substance in violation of the laws of this state.

Drugs and drug paraphernalia were found in his van. And, witnesses testified that they had seen defendant in possession of and using drugs and drug paraphernalia the prior day. Accordingly, given the instructions as a whole and the undisputed evidence, we view the error as harmless. *See Bogdanov v. People,* 941 P.2d 247 (Colo.1997).

## VII.

Defendant next asserts various contentions relative to the trial court's sentencing decision. As to those contentions, the prosecution concedes, and we agree, with defendant's contention that the trial court erred in entering multiple convictions for alternate violations provided under one statute.

## A.

▇ Defendant properly relies on *People v. Acosta,* 860 P.2d 1376 (Colo.App.1993), and *People v. Viduya,* 703 P.2d 1281 (Colo.1985), for his argument that vehicular homicide and vehicular assault constitute singular offenses. Reckless operation of a vehicle or driving under the influence are not denominated by the Colorado Criminal Code as separate and independent offenses, but only alternatives by which criminal liability for vehicular homicide or vehicular assault may be charged and prosecuted. *See* §§ 18–3–106(1)(a) & (b).

▇ Consequently, under the rule of lenity, defendant cannot be convicted of more than one kind of vehicular homicide or vehicular assault. *See People v. Lowe,* 660 P.2d 1261 (Colo.1983). However, to give the greatest effect to the jury's verdict, we vacate defendant's convictions for vehicular homicide (reckless) and vehicular assault (reckless). *See People v. Bartowsheski,* 661 P.2d 235 (Colo.1983).

## B.

This conclusion renders moot defendant's additional contentions that his convictions for careless driving resulting in death and careless driving must merge with his convictions for vehicular homicide (reckless) or vehicular assault (reckless).

## C.

▇ Finally, we reject defendant's contention that his conviction for careless driving must merge with those for careless driving resulting in death.

▇ Defendant was convicted of three counts of careless driving resulting in death. The careless driving violation, however, was based on injuries sustained by surviving victims. And, where the crimes have different victims, there is no merger. *See People v. Rodriguez,* 914 P.2d 230 (Colo.1996).

## VIII.

Last, although we disagree with defendant's contention that an amendment to his mittimus increased his sentence, we do remand for correction of other error.

▇ The original mittimus required that the death-related sentences, which totaled six years, be consecutive to the remaining felony and misdemeanor convictions, which totaled three years. The misdemeanor convictions were to be served at the county jail. However, the sentencing court entered a specific notation which ordered that "the sentences to the county jail are to be served at DOC."

The court later amended the mittimus by deleting that provision. However, the total term of defendant's sentence remained nine years.

We conclude that the amendment simply changed the location where defendant was to serve two years of his total nine-year sentence from DOC to a county facility. However, this was error.

Defendant's two-year sentence for misdemeanor convictions was, and remains, time to be served concurrently with all other counts, excluding the counts involving the deaths. Those other counts include felonies. Hence, the entirety of defendant's total nine-year sentence must be served at DOC. *See White v. Adamek,* 907 P.2d 735 (Colo.App.1995) (sentencing provision for adult felony offenders, § 16–11–301(1), C.R.S.1998, requires

that imprisonment for felony convictions be served by confinement in facility as determined by DOC).

Defendant's convictions for vehicular homicide (reckless) and vehicular assault (reckless) are vacated. The court's amendment to the mittimus requiring that defendant's sentences for misdemeanor convictions be served at the county jail is vacated. The remaining convictions are affirmed. The cause is remanded for correction of the mittimus in accordance with the views expressed in this opinion.

Judge NEY and Judge ROTHENBERG concur.