The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 19, 2021

## 2021COA111

## No. 18CA0464, *Peo v Caswell* — Crimes — Cruelty to Animals — Prior Convictions

As a matter of first impression, the division considers whether the Colorado legislature intended that prior convictions constitute a penalty enhancer rather than a substantive element of the offense of cruelty to animals, § 18-9-202, C.R.S. 2020.  Applying the supreme court's analysis in *Linnebur v. People*, 2020 CO 79M, the division concludes that the legislature clearly intended that prior convictions constitute a penalty enhancer and, therefore, affirm Constance E. Caswell's felony convictions.

The division also considers whether the trial court erred by denying (1) three of Caswell's for-cause challenges; (2) Caswell's pretrial motion to suppress; and (3) evidentiary objections at trial.

COLORADO COURT OF APPEALS                                    **2021COA111**

Court of Appeals No. 18CA0464
Lincoln County District Court No. 16CR32
Honorable Robert Lung, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Constance Eileen Caswell,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE ROMÁN
Harris and Lipinsky, JJ., concur

Announced August 19, 2021

Philip J. Weiser, Attorney General, Rebecca A. Adams, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jessica A. Pitts, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1   A jury found defendant, Constance Eileen Caswell, guilty of forty-three counts of cruelty to animals. § 18-9-202, C.R.S. 2020. The trial court sentenced her to forty-three days in jail, eight years of probation, and community service, and assessed fines and costs. Caswell contends on appeal that reversal is required because the trial court erred by (1) entering felony convictions even though the People did not prove beyond a reasonable doubt, to a jury, that Caswell had a prior conviction for cruelty to animals; (2) denying three for-cause challenges to potential jurors; (3) denying Caswell's pretrial motion to suppress evidence of dead dogs; and (4) admitting the evidence of dead dogs at trial contrary to CRE 403 and CRE 404(b). We affirm.

## I.   Background

¶ 2   Investigators from the Lincoln County Sheriff's Office seized twenty-nine dogs, four cats, five birds, and five horses from Caswell's property after observing no food or water available for the dogs; no water or fresh air for the cats; no food, drinkable water, or fresh air for the birds; and no drinkable water and insufficient food for the horses. In addition, enclosed spaces holding animals were covered in trash and feces and smelled strongly of ammonia.

Further, the majority of the seized animals were underweight, some were dehydrated, and some had untreated medical conditions, including lacerations. Investigators also exhumed five dead dogs, although the investigators could not discern when or how the dogs had died.

¶ 3     The People charged Caswell with forty-three counts of cruelty to animals. The jury convicted her on all counts. At sentencing, Caswell conceded that she had previously been convicted of cruelty to animals.[1] During sentencing, the trial court treated Caswell's prior convictions as sentence enhancers rather than as elements of the offense of cruelty to animals that a jury must find beyond a reasonable doubt. The court's finding that Caswell had prior convictions elevated her misdemeanor offenses to felonies.

## II.     Analysis

¶ 4     As a matter of first impression, we consider whether the Colorado legislature intended that prior convictions constitute a

---

[1] Before trial, defense counsel moved for a bifurcated jury trial to determine whether Caswell had a prior conviction. The trial court denied Caswell's motion, ruling that the prior conviction was a sentence enhancer and, therefore, a bifurcated jury trial was unnecessary.

penalty enhancer rather than a substantive element of the offense of cruelty to animals.  Because we conclude the trial court applied the correct standard when it determined whether Caswell was entitled to a jury determination of the prior conviction, we affirm her sentence and consider her for-cause challenges, motion to suppress, and evidentiary challenges.

### A.    Prior Convictions

¶ 5    Caswell contends the General Assembly intended prior convictions to constitute elements of the offense of felony cruelty to animals and, therefore, her conviction must be reversed because her prior conviction was not proven to a jury beyond a reasonable doubt.  She relies on the analysis in our supreme court's recent decision in *Linnebur v. People*, 2020 CO 79M.  We agree that the analysis in *Linnebur* is instructive, but we disagree that it requires a reversal in this case.

### 1.    Standard of Review and Applicable Law

¶ 6    "Whether a statutory provision constitutes a sentence enhancer or a substantive element of an offense presents a question of law that we review de novo."  *Id.* at ¶ 9.  Because "[t]he General Assembly has plenary authority to define criminal conduct and to

establish the elements of criminal liability," we construe the cruelty to animals statute to ascertain and give effect to the legislature's intent. *Id.*

¶ 7 To discern the legislature's intent, "we look first to the language of the statute, giving its words and phrases their plain and ordinary meanings." *Id.* (quoting *McCoy v. People*, 2019 CO 44, ¶ 37). "If the plain language of the statute demonstrates a clear legislative intent, we look no further in conducting our analysis." *Id.* (quoting *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 799 (Colo. 2000)).

¶ 8 If a statute does not explicitly designate whether a fact is an element of a crime or a sentencing factor, we look to the "(1) language and structure [of the statute], (2) tradition, (3) risk of unfairness, (4) severity of the sentence, and (5) legislative history" to determine the General Assembly's intent. *Id.* at ¶ 10 (quoting *United States v. O'Brien*, 560 U.S. 218, 225 (2010)).

## 2. Discussion

¶ 9 Section 18-9-202 — the cruelty to animals statute — provides, in relevant part, as follows:

(1)(a) A person commits cruelty to animals if he or she knowingly, recklessly, or with criminal negligence overdrives, overloads, overworks, torments, deprives of necessary sustenance, unnecessarily or cruelly beats, allows to be housed in a manner that results in chronic or repeated serious physical harm, carries or confines in or upon any vehicles in a cruel or reckless manner, engages in a sexual act with an animal, or otherwise mistreats or neglects any animal, or causes or procures it to be done, or, having the charge or custody of any animal, fails to provide it with proper food, drink, or protection from the weather consistent with the species, breed, and type of animal involved, or abandons an animal.

. . . .

(2)(a) Except as otherwise provided in subsection (2)(b) of this section, cruelty to animals . . . is a class 1 misdemeanor.

. . . .

(2)(b)(I) A second or subsequent conviction under the provisions of paragraph (a) of subsection (1) of this section is a class 6 felony.

¶ 10     While the cruelty to animals statute does not explicitly specify whether prior convictions are an element of the offense or a penalty enhancer, our statutory analysis leads us to the conclusion that the language and structure of the statute clearly signal the General

5

Assembly's intent to designate prior convictions as penalty enhancers.

¶ 11    What persuades us the most is that the provision at issue is included in the subsection of the statute that enumerates penalties and sentencing provisions, as opposed to the subsection containing the substantive elements of the crime.  *Compare* § 18-9-202(1)(a)-(c) (enumerating the elements of the offenses of cruelty to animals, aggravated cruelty to animals, and cruelty to a service animal), *with* § 18-9-202(2)(a)-(c) (outlining the sentencing and penalties associated with a cruelty to animals conviction).

¶ 12    In addition, the cruelty to animals statute does not require that the prior convictions be charged in the indictment or information.

¶ 13    Caswell argues the supreme court's analysis and conclusion in *Linnebur* compel a different result.  There, the court concluded that the language and structure of the statutes outlining the elements and penalties for felony and misdemeanor DUI clearly indicated the General Assembly's intent to make prior DUI convictions elements of the offense of felony DUI.  *Linnebur, ¶¶ 22-24.*

¶ 14    In support of its conclusion, the *Linnebur* court specifically noted (1) the legislative history of constructive amendments to the DUI statute "suggest[ed] that the General Assembly intended prior convictions to be treated differently when the defendant is charged with a felony than when he is charged with a misdemeanor," *id.* at ¶¶ 21-22; (2) the General Assembly included a provision that prior DUI and DWAI convictions must be charged in the indictment or information, *id.* at ¶ 22; (3) the statutory language escalating the penalty is in the same provision as the other elements of the substantive offense, rather than in the statutory provision setting forth penalties, *id.* at ¶ 23; and (4) the General Assembly provided "numerous additional protections . . . for defendants charged with felony DUI," including a preliminary hearing, a trial by a twelve-person jury, and the right to a unanimous verdict, *id.* at ¶ 24.

¶ 15    And, while the court recognized that, "[i]n a vacuum, tradition would certainly weigh in favor of considering the fact of prior convictions to be a sentence enhancer," the clear language and structure of the felony DUI statute compelled its conclusion that the prior convictions were elements of felony DUI. *Id.* at ¶¶ 26-27.

¶ 16    Finally, the court contemplated the risk of unfairness and when to consider whether, under the Sixth Amendment, a jury must decide if the defendant had prior convictions:

> [T]here are good reasons to question the legitimacy of proving prior convictions only to a judge when the prescribed penalties (and attendant collateral consequences) for felony [driving under the influence (DUI)] are so significant.  Ultimately though, subject to constitutional limitations, whether the fact of prior convictions constitutes an element of the offense or a sentence enhancer depends on legislative intent.  As such, if we can glean a clear legislative intent in either direction, then we may leave aside the Sixth Amendment issue and simply resolve this case as a matter of statutory interpretation.

*Id.* at ¶ 31.

¶ 17    In our view, the language and structure of the cruelty to animals statute are different than those of the DUI statutory scheme, compelling a different result.  Unlike the structure of the felony DUI statute, the prior conviction language in the cruelty to animals statute appears in a different subsection from that setting forth the elements of the substantive offense.  *Compare* § 18-9-202(1)-(2), *with* § 42-4-1301(1)(a), C.R.S. 2020.  And, unlike the prior conviction penalty enhancer provisions of the DUI statutory

8

scheme, which *omit* the prior convictions required for felony DUI, the prior conviction provision in the animal cruelty statute is included in the subsection outlining penalty and sentencing provisions. *See* § 42-4-1307(5), (6), C.R.S. 2020. Also, unlike the felony DUI statute, the animal cruelty statute does not require prior convictions to be alleged in the indictment or information for a second or subsequent charge of cruelty to animals. *Compare* § 42-4-1301(1)(j), *with* § 18-9-202.

¶ 18 Moreover, we are unpersuaded that the *Linnebur* court's analysis regarding tradition and fairness compel us to conclude that prior convictions are elements of the offense rather than penalty enhancers. First, while not dispositive, tradition "would certainly weigh in favor of considering the fact of prior convictions to be a [penalty] enhancer." *Linnebur*, ¶ 26. Indeed, at least one division of this court has concluded that prior convictions under the cruelty to animals statute is a penalty enhancer. *See People v. Harris*, 2016 COA 159, ¶ 75; *see also Linnebur*, ¶ 43 (Márquez, J., dissenting) (treating prior convictions as penalty enhancements "is . . . consistent with the legislature's treatment of prior

convictions in other statutes, such as cruelty to animals and indecent exposure") (citations omitted).

¶ 19     Second, because we conclude that the legislature clearly intended prior convictions to constitute penalty enhancers rather than a substantive element of the offense of cruelty to animals, "we may leave aside the Sixth Amendment issue and simply resolve this case as a matter of statutory interpretation." *Linnebur*, ¶ 31; *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

¶ 20     Accordingly, we conclude that, because the statutory language indicates that the legislature clearly intended prior convictions under the animal cruelty statute to constitute a penalty enhancement, the prior convictions need not be found by a jury. *See Apprendi*, 530 U.S. at 490.  Thus, we affirm Caswell's felony conviction.

## B.     For-Cause Challenges

¶ 21     Caswell argues the trial court erred by denying for-cause challenges to three potential jurors who she contends were biased — Juror J, Juror F, and Juror D.  Although defense counsel exercised peremptory strikes to remove these three jurors, Caswell also argues that her constitutional right to an impartial jury was

violated because defense counsel was forced to exercise peremptory strikes that counsel may have used on other jurors because of the trial court's error.

¶ 22    Assuming, without deciding, that Caswell is correct that Juror J, Juror F, and Juror D should have been removed for cause, we discern no reversible error. *Vigil v. People*, 2019 CO 105, ¶¶ 21, 25. Absent a showing of the trial court's bad faith, a defendant's right to an impartial jury is not adversely affected by an erroneous denial of his challenge for cause if that juror is otherwise removed — for example, by a peremptory challenge. *Id.*

¶ 23    None of these three prospective jurors sat on the jury, and we are not persuaded the trial court acted in bad faith in failing to dismiss them. *Id.* at ¶ 25. Indeed, the record reflects the trial court attempted to seat a fair and impartial jury as the court granted seven of Caswell's challenges for cause. *Id.* at ¶ 21. Accordingly, we reject Caswell's contentions regarding jury selection.

### C.    Admission of Evidence of Dead Animals

¶ 24    Caswell next argues the trial court erred in denying her motion to suppress evidence of dead animals, and subsequently erred by admitting the evidence at trial contrary to CRE 403 and CRE

11

404(b). Because any error in the introduction of this evidence at trial was harmless beyond a reasonable doubt, we discern no reversible error.

### 1. Additional Facts

¶ 25    Caswell moved to suppress evidence of dead dogs buried on her property, arguing that the search warrant violated Caswell's Fourth Amendment rights because it "contained no mention of dead animals and did not grant any authority to law enforcement officials to dig on the property." *See* U.S. Const. amend. IV. The prosecution argued that evidence of the dead dogs was admissible because the affidavit supporting the warrant, which requested permission to seize animals "living, dead, born and unborn, above or below ground and any other that appear to be neglected or abused," was curative pursuant to *People v. Stanton*, 924 P.2d 127 (Colo. 1996). In *Stanton*, the supreme court held that a deficient warrant can be cured by an accompanying affidavit if (1) the warrant incorporates a curative affidavit by reference; (2) both documents are presented to the issuing magistrate or judge; and (3) the curative affidavit accompanies the warrant during the execution of the warrant. *Id.* at 132.

¶ 26    Relying on *Stanton,* the trial court denied the motion to suppress, finding that the affidavit cured any deficiency in the warrant.

¶ 27    At trial, the People sought to admit the evidence of the dead dogs through the testimony of Officer Joseph Colpitts, who first came into contact with Caswell and the animals and submitted the affidavit in support of the search warrant.  Caswell's counsel objected, arguing that the evidence was irrelevant and unduly prejudicial under CRE 401, 402, and 403.  The prosecutor argued the evidence was relevant to the "care that the Caswells had provided to the animals that they had on their property," and that the evidence's probative value substantially outweighed the prejudicial effect.  The trial court agreed with the prosecutor, ruling that, although "the existence of [the dead] animal[s] . . . doesn't prove anything," the evidence was relevant "to the property there" and, affording the evidence its maximum probative value and minimum prejudicial effect, allowed the prosecutor to elicit the testimony.

## 2. Discussion

¶ 28    We review preserved errors of a constitutional dimension for constitutional harmless error. *Hagos v. People*, 2012 CO 63, ¶ 11. Under that standard, we will reverse unless the People establish any error was harmless beyond a reasonable doubt. *Id.*

¶ 29    Once again, assuming, without deciding, that the trial court improperly denied the motion to suppress, we conclude that the admission of the evidence was nevertheless harmless beyond a reasonable doubt. *See People v. Bass*, 155 P.3d 547, 551 (Colo. App. 2006).

¶ 30    In considering whether an error was constitutionally harmless, we "examine a number of factors, including the importance of the evidence to the prosecution's case, the cumulative nature of the evidence, the presence or absence of corroborating or contradictory evidence on the material points of the evidence, and the overall strength of the prosecution's case." *Id.* (citing *Blecha v. People*, 962 P.2d 931 (Colo. 1998)).  While our review of the trial court's rulings on the motion to suppress and the relevancy of the evidence is based only on the evidence presented at the suppression hearing

and trial, respectively, we consider the entire record in evaluating whether any error was harmless. *People v. Singley*, 2015 COA 78M.

¶ 31  Applying the relevant factors, we conclude the evidence of the dead dogs was harmless beyond a reasonable doubt for two reasons.

¶ 32  First, the properly admitted evidence of Caswell's guilt was overwhelming.  The court instructed the jury that to find Caswell guilty they had to find, beyond a reasonable doubt, that Caswell knowingly, recklessly, or with criminal negligence "failed to provide [the animal] with proper food, drink, or protection from the weather consistent with the species, breed, and type of animal involved." *See* § 18-9-202(1)(a).

¶ 33  The jury heard testimony from multiple animal care investigators, a veterinarian, and Officer Colpitts:

- The dogs had no available food or drinking water.

- The dogs, mostly short-haired breeds, were kept in environments that smelled strongly of ammonia and were covered in trash and feces, and some of the dogs were exposed to wind and cold.

- "Quite a few" dogs were underweight and/or had injuries that were "bloody and raw" and did not appear to have received any medical treatment.

- The cats were locked in a room that smelled strongly of ammonia with no water or access to food.

- The birds did not have clean water or food.

- The birds were kept in cages that contained a buildup of waste, in a room with little light or fresh air.

- The horses were all underweight, had access to only frozen water, and were given less than half of the food they required.

¶ 34 In addition, jurors saw body camera footage depicting this evidence. Likewise, the expert in animal investigations, treatment, and care who examined the property went through photographs of each of the forty-three animals one by one, stating the animals' condition.

¶ 35 Second, the evidence regarding the dead dogs was not important to the prosecution's case, as each of the forty-three counts of cruelty to animals pertained to a specific, live animal recovered from the property and did not include the dead dogs.

16

And the testimony regarding the dead dogs constituted only a minor part of only Officer Colpitts's testimony.[2] The remaining witnesses, including a Pet Animal Care and Facilities inspector, an investigator with the Colorado Humane Society, and an expert in veterinarian medicine, did not testify about the dead dogs. Further, the prosecutor did not refer to the dead dogs during closing argument.

¶ 36 Accordingly, we discern no reversible error in denying Caswell's motion to suppress or in admitting the evidence at trial. *See Bass*, 155 P.3d at 551.

### III. Conclusion

¶ 37 The judgment of conviction is affirmed.

JUDGE HARRIS and JUDGE LIPINSKY concur.

---

[2] Officer Colpitts testified that he did not know when the dogs died or what caused their death, thereby further reducing the significance of the evidence with respect to the charges.